United States District Court
For the Northern District of California

1
2
3
4
5                    UNITED STATES DISTRICT COURT
6                    NORTHERN DISTRICT OF CALIFORNIA
7
8    JAMES E. DALY,
9               Petitioner,                          No. C 12-0091 PJH
10         v.
11   W. KNIPP, Warden                                **ORDER GRANTING MOTION
                                                     TO DISMISS HABEAS
12              Respondent.                           PETITION AS UNTIMELY AND
     _____/            ISSUING CERTIFICATE OF
13                                                    APPEALABILITY**

14         Before the court is the motion of respondent W. Knipp to dismiss the petition for writ

15   of habeas corpus, pursuant to 28 U.S.C. § 2254, filed by state prisoner, James E. Daly.

16   Having reviewed the parties' papers and having carefully considered their arguments and

17   the relevant legal authorities, the court GRANTS the motion to dismiss the petition as

18   untimely.

19                              **BACKGROUND**

20         The following summary of the trial court proceedings is taken from the opinion of the

21   court of appeal affirming Daly's conviction. *See People v. Daly*, No. H031750, 2009 WL

22   757337 (Cal. Ct. App. March 24, 2009).  Daly was charged with one count of continuous

23   sexual abuse of a child under the age of 14, in violation of Cal. Penal Code § 288.5(a), and

24   21 counts of lewd acts on a child, in violation of Cal. Penal Code § 288, for sexual conduct

25   with his stepdaughter.  A jury trial was held in the Superior Court for Monterey County.

26   Daly failed to appear for closing arguments and the jury was instructed not to draw any

27   adverse inference from his absence.  On April 13, 2005, a jury convicted Daly on all 22

28   counts.  Daly traveled to Argentina and then Uruguay, where he was arrested by Interpol

1    and returned to Monterey County.  On June 18, 2007, the trial court denied Daly's motion

2    for a new trial and sentenced him to a state prison term of 58 years.  *Id.* at *3.

3         On March 24, 2009, the court of appeal affirmed the judgment of the trial court.

4    Motion to Dismiss ("Mot."), Ex. A (Cal. Ct. App. docket report for *People v. Daly*, No.

5    H031750).[1]

6         On May 4, 2009, Daly filed a petition for review in the California Supreme Court,

7    which denied review on July 13, 2009.  *Id.*

8         On September 24, 2009, Daly filed a petition for writ of certiorari in the United States

9    Supreme Court, which denied the petition on November 30, 2009.  Mot, Ex. B (Supreme

10   Court docket report for *Daly v. Cal.*, No. 09-6729).

11        On November 30, 2010, Daly mailed his state habeas petition to the superior court.

12   Doc. no. 4 (Mot. for Stay and Abeyance).  The superior court filed the petition on December

13   2, 2010, and denied the petition by order filed on March 25, 2011.  Mot., Ex. C.

14        On May 16, 2011, Daly filed a habeas petition in the court of appeal, which denied

15   the petition on June 22, 2011.  Mot., Ex. D.  On August 23, 2011, Daly filed a habeas

16   petition in the state supreme court.  Mot., Ex. E.  On January 18, 2012, the state supreme

17   court denied the petition as untimely, citing *In re Robbins*, 18 Cal. 4th 770, 780 (1998).

18   Mot., Ex. E.

19        On January 5, 2012, Daly filed the instant petition for writ of habeas corpus.

20                              **LEGAL STANDARD**

21        Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),

22   petitions filed by prisoners challenging non-capital state convictions or sentences must be

23   filed within one year of the latest of the date on which:  (A) the judgment became final after

24   _____

25        [1]     Respondent attached copies of various court docket sheets to the motion to
26   dismiss without filing a declaration or request for judicial notice identifying those documents.
     In the absence of an objection by Daly to the exhibits, the court takes judicial notice of the filing
27   dates in Daly's state court proceedings as matters of public record taken from publicly
     available court websites whose accuracy cannot reasonably be questioned pursuant to Federal
28   Rule of Evidence 201.

United States District Court

For the Northern District of California

the conclusion of direct review or the time passed for seeking direct review; (B) an impediment to filing an application created by unconstitutional state action was removed, if such action prevented petitioner from filing; (C) the constitutional right asserted was recognized by the Supreme Court, if the right was newly recognized by the Supreme Court and made retroactive to cases on collateral review; or (D) the factual predicate of the claim could have been discovered through the exercise of due diligence.  28 U.S.C. § 2244(d)(1).

AEDPA's one-year statute of limitations is statutorily tolled under § 2244(d)(2) for the "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim [was] pending."  28 U.S.C. § 2244(d)(2).  The circumstances under which a state petition will be deemed "pending" for purposes of § 2244(d)(2) is a question of federal law.  *Welch v. Carey*, 350 F.3d 1079, 1080 (9th Cir. 2003).  An application for collateral review is "pending" in state court "as long as the ordinary state collateral review process is 'in continuance' – *i.e.*, 'until the completion of' that process."  *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002) (citations omitted).  In other words, until the application has achieved final resolution through the State's post-conviction procedures, by definition it remains "pending."  *Id.* at 220.

AEDPA's statute of limitations is subject to equitable tolling only if the petitioner shows "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing."  *Holland v. Florida*, 130 S. Ct. 2549, 2562 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).  The petitioner must show that the extraordinary circumstances were the cause of his untimeliness and that the extraordinary circumstances made it impossible to file a petition on time.  *Porter v. Ollison*, 620 F.3d 952, 959 (9th Cir. 2010) (internal quotation marks and citations omitted).  "The threshold necessary to trigger equitable tolling under AEDPA is very high, lest the exceptions swallow the rule."  *Id.* (internal quotation marks and citations omitted).

3

**DISCUSSION**

**A.     Untimeliness**

Respondent seeks dismissal of Daly's petition on the ground that the petition is barred by the statute of limitations.  Daly concedes that his conviction became final on November 30, 2009, and that the AEDPA limitations period expired on November 30, 2010, absent tolling.  Opp. at 2.  *See Patterson v. Stewart*, 251 F.3d 1243, 1246 (9th Cir. 2001) (adopting what is referred to as the "anniversary method" because, absent any tolling, the expiration date of the limitation period will be the same date as the triggering event but in the following year).  Daly filed his habeas petition in superior court on November 30, 2010, by application of the prison mailbox rule, which respondent does not dispute.  Mot. at 3. Thus, absent tolling, the limitations period had run for 365 days when Daly filed his state habeas petition.  *See Nino v. Galaza*, 183 F.3d 1003, 1006 (9th Cir. 1999) (limitation period is not tolled during the time between the date on which a final decision is issued on direct appeal and the date on which the first state collateral challenge is filed), *overruled on other grounds as recognized by Nedds v. Calderon*, 678 F.3d 777, 781-82 (9th Cir. 2012).

Respondent concedes that Daly was entitled to continuous tolling of the limitations period during the pendency of the superior court petition, the interval between his superior court and appellate court petitions, and the pendency of his appellate court petition up to June 22, 2011, when the court of appeal denied the petition.

Respondent contends that the limitations period was not further tolled by the August 23, 2011 filing of the habeas petition in the state supreme court, which denied the habeas petition as untimely, and that the limitations period expired with the court of appeal's denial of the habeas petition on June 22, 2011.  Mot. at 4.  Daly concedes that the untimely state habeas petition was not "properly filed" for purposes of statutory tolling under § 2244(d)(2). Opp. at 2.  *See Cross v. Sisto*, 676 F.3d 1172, 1176 (9th Cir. 2012) ("A state habeas petition is not 'properly filed' for purposes of statutory tolling under AEDPA if the state petition was determined by the state court to be untimely as a matter of state law.  Hence, untimely state habeas corpus petitions do not toll AEDPA's statute of limitations.") (citations

4

United States District Court
For the Northern District of California

1   omitted).  Daly argues that the state supreme court did not specify where the purported

2   untimeliness occurred, and infers, based on the record, that the untimeliness was due to

3   the one-year delay between the conclusion of direct review on November 30, 2009, and the

4   filing of Daly's initial state habeas petition in the superior court on November 30, 2010.

5   Opp. at 3.  As respondent's briefs are silent on this issue, there is no dispute that Daly's

6   one-year delay in filing the habeas petition in state court was the ground for the state

7   supreme court's holding that the petition was untimely.

8        Absent tolling, the limitations period expired on June 22, 2011, and Daly filed the

9   instant habeas petition 197 days later on January 5, 2012.  To excuse the delay, Daly

10  contends that he is entitled to equitable tolling for the one year between November 30,

11  2009, the date his judgment became final, and November 30, 2010, when he filed his state

12  habeas petition.

13  **B.    Equitable Tolling**

14       The Supreme Court has determined that AEDPA's statute of limitations is subject to

15  equitable tolling in appropriate cases.  *Holland*, 130 S. Ct. at 2560.  "[A] 'petitioner' is

16  'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights

17  diligently, and (2) that some extraordinary circumstance stood in his way' and prevented

18  timely filing."  *Id.* at 2562 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).  *Accord*

19  *Rasberry v. Garcia*, 448 F.3d 1150, 1153 (9th Cir. 2006); *Miles v. Prunty*, 187 F.3d 1104,

20  1107 (9th Cir. 1999) ("When external forces, rather than a petitioner's lack of diligence,

21  account for the failure to file a timely claim, equitable tolling of the statute of limitations may

22  be appropriate.").

23       Daly asserts that he pursued his rights diligently and experienced extraordinary

24  circumstances that prevented timely filing.  If the court determines that no extraordinary

25  circumstances stood in the way of complying with the statute of limitations, it is not

26  necessary to address the diligence element.  *Rasberry*, 448 F.3d at 1153.

27

28

5

United States District Court
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 1.    Access to Legal Files

First, Daly contends that he was faced with "a remarkable amount of materials (at least 15,000 pages) that he had to review in order to identify, support, and research potential issues, resulting in a petition with 42 distinct issues." Opp. at 10.  Deprivation of legal materials is the type of external impediment that may satisfy the extraordinary circumstances requirement for equitable tolling.  *Lott v. Mueller*, 304 F.3d 918, 924 (9th Cir. 2002) (remanding to develop facts related to availability of equitable tolling where the petitioner alleged that he was denied access to his files during two temporary transfers that lasted eighty-two days).  However, the petitioner who asserts lack of access to legal materials bears the burden of showing his own diligence and that the hardship caused by lack of access to his materials was an extraordinary circumstance that caused him to file his petition late.  *Waldron-Ramsey v. Pacholke*, 556 F.3d 1008, 1013 (9th Cir. 2009).

In *Waldron-Ramsey*, the prisoner filed his petition 340 days after the AEDPA deadline and sought equitable tolling of the limitations period on the ground that he was deprived of his legal materials and was unable to conduct the necessary research to develop his habeas petition.  Waldron-Ramsey argued that he was only permitted to keep three boxes of legal materials at a time, that he needed all of his 15,000 pages of materials at all times so that he could cross-reference documents, and that he could not exchange materials because shipping was too expensive for him.  *Id.*  The court of appeals found that Waldron-Ramsey failed to demonstrate diligence where the record showed that he was uncooperative, refused to sign the release of the materials, and refused to consolidate the most relevant materials into the three boxes he was allowed to have at a time.  The court also held that even if certain documents were more relevant to developing certain claims, as Waldron-Ramsey argued, he did not point to specific instances where he needed a particular document, could not have kept that document within his permitted three boxes had he been cooperative, and could not have procured that particular document when needed.  *Id.* at 1013-14.  The court distinguished Waldron-Ramsey's case from *Lott*, where

1    the petitioner filed his petition only seven days late despite being deprived of all of his files

2    for at least 82 days.  *Id.* at 1014 (citing *Lott*, 304 F.3d at 924-25).

3         Daly contends that he was prevented from timely filing his habeas petition because

4    he did not obtain complete access to all of his legal materials from the prison until May

5    2010.  Opp. at 10; Daly Decl. ¶ 6.  Daly refers to prison rules limiting him to one box of

6    materials in his cell, requiring him to request one box at a time from the prison.  Daly Decl.

7    ¶ 6 ("An inmate is only allowed to have one box of materials in his cell, and the boxes I

8    received my trial and appellate lawyers were much more than that.").  This limitation is

9    common to all inmates, as Daly acknowledges, and is therefore insufficient to establish the

10   existence of the "'extraordinary circumstances'" that would entitle him to equitable tolling.

11   *See Waldron-Ramsey*, 556 F.3d at 1014 ("The exception for equitable tolling cannot be

12   interpreted so broadly as to displace the statutory limitations that Congress crafted.").  Daly

13   was not prevented from access to all his legal files, but was allowed one box at a time.

14   Further, he does not identify "specific instances where he needed a particular document

15   . . . and could not have procured that particular document when needed."  *Id.* at 1013-14.

16   Additionally, Daly acknowledges that he had obtained access to all six boxes of materials

17   by May 13, 2010, so that the limitation on accessing his legal materials for the 164-day

18   period from November 30, 2009 to May 13, 2010, fails to account fully for the 197-day

19   delay in filing his federal habeas petition.  Opp. at 5; Daly Decl. at 16 (personal property

20   log).

21        Daly also contends that the sheer volume of materials prevented him from filing a

22   timely petition.  Opp. at 4.  Here, as in *Waldron-Ramsey*, Daly's legal files amounted to

23   about 15,000 pages, and although his access to those files was limited, it was not denied

24   altogether, as alleged in *Lott*.  Voluminous records of state court proceedings are a

25   common circumstance facing many federal habeas petitioners and do not present

26   extraordinary circumstances that warrant equitable tolling.  *See Chaffer v. Prosper*, 592

27   F.3d 1046, 1049 (9th Cir. 2010) ("these circumstances are hardly extraordinary given the

28   vicissitudes of prison life, and there is no indication in the record that they made it

United States District Court
For the Northern District of California

1  'impossible' for him to file on time") (citation omitted).  Furthermore, a pro se petitioner's

2  lack of legal sophistication is not, by itself, an extraordinary circumstance warranting

3  equitable tolling.  *Rasberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir. 2006).

4       Neither the prison limitations on accessing one box of legal materials at a time, nor

5  the volume of those materials, present extraordinary circumstances that prevented Daly

6  from timely filing a "minimally adequate habeas petition," as required by AEDPA.  *See Bills*

7  *v. Clark*, 628 F.3d 1092, 1100 (9th Cir. 2010).

8       **2.      Mental Impairment**

9       Daly contends that he is entitled to equitable tolling due to mental impairment and a

10 neurological event that limited his ability to function.  Daly states that in 2009, the prison

11 doctors discontinued his anti-depressant and anti-psychotic medication, Celexa, after he

12 experienced rashes, and switched him to Prozac.  Daly Decl. ¶ 11.  On June 23, 2010, Daly

13 suffered a serious neurological event that required hospitalization.  *Id.* ¶ 12.  Daly's medical

14 records reflect his complaints of "altered consciousness," "changed mental status," "acute

15 mental status change" (marked as resolved), and "seizure."  Hillberg Decl. at 31, 32, 34,

16 37.  Daly was discharged back to the prison the same day.  *Id.* at 35-36.

17      Two days later, Daly met the prison psychologist and complained of "dullness since

18 seizure."  *Id.* at 37.  Daly states that the prison doctors thought that the Prozac may have

19 caused the neurological event and, on June 29, 2010, abruptly discontinued the Prozac

20 without substituting another anti-depressant.  Daly Decl. ¶ 14.  Daly argues that gradual

21 reduction, rather than abrupt cessation, is recommended for discontinuing treatment of

22 Prozac, and contends that he suffered antidepressant discontinuation syndrome as a result

23 of being abruptly taken off of Prozac.  Opp. at 7-8.  Daly contends that he spiraled into a

24 paralyzing depression and was unable to work on his habeas case.  Daly Decl. ¶ 14.  He

25 was prescribed Celexa in mid-September 2010, and states that he was able to resume

26 working on his habeas petition within a few weeks.  *Id.* ¶ 15; Hillberg Decl. at 39 (Sept. 16,

27 2010 progress notes).

28

United States District Court
For the Northern District of California

1  Daly contends that he is entitled to equitable tolling due to mental impairment during

2  the period from June 23, 2010 to about September 30, 2010.  Daly Decl. ¶ 17.  In *Bills*, 628

3  F.3d at 1100-01, the Ninth Circuit held that "the 'extraordinary circumstance' of mental

4  impairment can cause an untimely habeas petition at different stages in the process of filing

5  by preventing petitioner from understanding the need to file, effectuating a filing on his own,

6  or finding and utilizing assistance to file."  Under *Bills*, eligibility for equitable tolling due to

7  mental impairment requires the petitioner to meet a two-part test:

8  (1)  First, a petitioner must show his mental impairment was an
    "extraordinary circumstance" beyond his control, *see Holland*,
9  130 S. Ct. at 2562, by demonstrating the impairment was so
    severe that either

10  (a)  petitioner was unable rationally or factually to
11  personally understand the need to timely file, or

12  (b)  petitioner's mental state rendered him unable
    personally to prepare a habeas petition and effectuate
13  its filing.

14  (2)  Second, the petitioner must show diligence in pursuing the
    claims to the extent he could understand them, but that the
15  mental impairment made it impossible to meet the filing
    deadline under the totality of the circumstances, including
16  reasonably available access to assistance.  *See id.*

17  The "totality of the circumstances" inquiry in the second prong
    considers whether the petitioner's impairment was a but-for cause of
18  any delay.  Thus, a petitioner's mental impairment might justify
    equitable tolling if it interferes with the ability to understand the need
19  for assistance, the ability to secure it, or the ability to cooperate with
    or monitor assistance the petitioner does secure.  The petitioner
20  therefore always remains accountable for diligence in pursuing his or
    her rights.

21

22  *Id.* at 1099-1100.  Under *Bills*, to evaluate whether a petitioner is entitled to equitable

23  tolling, the court must: (1) find the petitioner has made a non-frivolous showing that he had

24  a severe mental impairment during the filing period that would entitle him to an evidentiary

25  hearing; (2) determine, after considering the record, whether the petitioner satisfied his

26  burden that he was in fact mentally impaired; (3) determine whether the petitioner's mental

27  impairment made it impossible to timely file on his own; and (4) consider whether the

28

United States District Court

For the Northern District of California

1   circumstances demonstrate the petitioner was otherwise diligent in attempting to comply

2   with the filing requirements.  *Id.* at 1100-01.

3       The *Bills* test for mental impairment requires the court to evaluate how a petitioner's

4   mental impairment bore on his ability to file.  "The relevant question is: Did the mental

5   impairment cause an untimely filing?"  *Bills*, 628 F.3d at 1100 n.3 (citing *Spitsyn v. Moore*,

6   345 F.3d 796, 799 (9th Cir. 2003) (equitable tolling is available if it was "impossible to file a

7   petition on time").  The question of mental competence "requires the court to evaluate the

8   petitioner's ability to do by himself the two functions involved in complying with the AEDPA

9   filing deadlines - i.e., understand the need to file within the limitations period, and submit a

10  minimally adequate habeas petition - and to evaluate the petitioner's diligence in seeking

11  assistance with what he could not do alone."  *Id.* at 1100.  The *Bills* court noted, however,

12  that in *Harris v. Carter*, 515 F.3d 1051, 1055 n. 5 (9th Cir. 2008), the court of appeals

13  commented, in a footnote, that "despite the unequivocal 'impossibility' language in our

14  standard, we have not insisted that it be literally impossible for a petitioner to file a federal

15  habeas petition on time as a condition of granting equitable tolling.  We have granted

16  equitable tolling in circumstances where it would have technically been possible for a

17  prisoner to file a petition, but a prisoner would have likely been unable to do so."  *Bills*, 628

18  F.3d at 1100 n.3 (quoting *Harris*) (internal quotation marks omitted).

19      With respect to the first prong under *Bills*, respondent argues that Daly's symptoms

20  of "dysphoric" mood and "substantial depression" did not leave him unable to understand or

21  prepare his habeas petition where his psychological evaluations showed that he was within

22  normal limits for appearance, motor activity, affect, thought content and thought process,

23  that his attitude was "cooperative," that his sleep and appetite were "ok," and that he

24  exercised daily.  Reply at 6 (citing Hillberg Decl. at 38 (Sept. 9, 2010 progress notes)).

25  Daly's own medical records indicate that he was able to understand the need to timely file

26  his petition, where Daly told his psychologist about a filing deadline in his habeas corpus

27  case.  Hillberg Decl. at 37 (June 25, 2010 progress notes).  Further, Daly was capable of

28  meeting his psychologist and social worker and discussing his symptoms during the period

that he experienced mental health problems.  His medical records confirm his symptoms of depression, but do not demonstrate a "severe mental impairment" that prevented him from understanding the need to timely file a habeas petition and to submit a minimally adequate habeas petition, as required by *Bills*.

With respect to the second *Bills* prong, respondent contends that Daly fails to establish diligence.  Daly has not demonstrated diligence in seeking jailhouse assistance during the time that he suffered from the "mental dulling," referring only to seeking help from his family, especially from his wife.  Daly Decl. ¶¶ 13, 17.  As the court held in *Bills*, "[t]he availability of assistance is an important element to a court's diligence analysis. . . . That is not to say a prisoner fails the diligence requirement for refusing jailhouse assistance.  It is only part of the overall assessment of the totality of circumstances that goes into the equitable determination."  628 F.3d at 1101.  On the current record, it is unclear whether jailhouse assistance was readily available to assist Daly when his mental health was weakened, and how that assistance, if any, bore on his ability to meet the filing deadline.  The court determines, however, that it is unnecessary to reach the diligence inquiry because the evidence submitted by Daly does not support a finding that Daly had a mental impairment during the filing period that was so severe as to amount to an extraordinary circumstance that would entitle him to equitable tolling.

Alternatively, even if Daly made a prima facie showing of a severe mental impairment that made it impossible to timely file his habeas petition during the time that he suffered from the neurological event and substantial depression, the court determines that an evidentiary hearing is not required because equitable tolling of that 99-day period would not render his habeas petition timely.  Absent tolling, Daly filed the instant habeas petition 197 days beyond the limitations period.  Even if Daly were given the benefit of equitable

\\

\\

United States District Court

For the Northern District of California

tolling for the 99-day period between June 23, 2010 and September 30, 2010 when he claimed mental impairment, his federal petition would remain untimely by 98 days.[2]

### 3. Lockdown

Daly also contends that he is entitled to equitable tolling from November 5, 2010 to November 29, 2010, when the prison library was locked down due to an outbreak of chicken pox. Opp. at 9; Hillberg Decl. at 65. He argues that he was restricted in his ability to do research and to make copies for his habeas filing during this 24-day period. Under Ninth Circuit authority, this limitation on Daly's access to the prison library does not constitute exceptional circumstances that warrant equitable tolling. "Ordinary prison limitations on [a petitioner's] access to the law library and copier (quite unlike the denial altogether of access to his personal legal papers) were neither 'extraordinary' nor made it 'impossible' for him to file his petition in a timely manner. *Ramirez v. Yates*, 571 F.3d 993, 998 (9th Cir. 2009) (denying equitable tolling for the 11-week period that the prisoner stayed in administrative segregation and had limited access to the prison library). *See also Chaffer v. Prosper*, 592 F.3d 1046, 1049 (9th Cir. 2010) (per curiam) (prisoner's pro se status, law library missing a "handful" of reporter volumes, and reliance on inmate helpers who were transferred or too busy to attend to his petitions are not extraordinary circumstances "given the vicissitudes of prison life"). Daly fails to carry his burden of showing that he is entitled to equitable tolling. *Miranda v. Castro*, 292 F.3d 1063, 1065 (9th Cir. 2002) (petitioner asserting right to equitable tolling bears the burden of showing that this "extraordinary exclusion" should apply to him).

---

[2] The remaining 98-day delay, after tolling the period of alleged mental impairment, is calculated as follows: the limitations period ran for 205 days from November 30, 2009 to June 23, 2010, the date of the neurological event. Tolling the period from June 23, 2010 to September 30, 2010, the limitations period ran another 61 days until November 30, 2010, when Daly filed his habeas petition in the superior court. At that point, the statute of limitations had run 266 days and was tolled during the pendency of the properly filed state habeas proceedings until June 22, 2011, when the court of appeal denied the petition. The limitations period expired 99 days later, on September 29, 2011. However, Daly did not file his federal habeas petition until January 5, 2012, 98 days past the limitations period.

**CONCLUSION**

For the reasons set forth above, the motion to dismiss the habeas petition as untimely is **GRANTED**.  The petition is **DISMISSED**.  The clerk shall close the file.

**CERTIFICATE OF APPEALABILITY**

The certificate of appealability requirement applies to an appeal of a final order entered on a procedural question antecedent to the merits, for instance a dismissal on statute of limitations grounds, as here.  *See Slack v. McDaniel*, 529 U.S. 473, 483 (2000).  "Determining whether a COA should issue where the petition was dismissed on procedural grounds has two components, one directed at the underlying constitutional claims and one directed at the district court's procedural holding."  *Id.* at 484-85.  "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Id.* at 484.  As each of these components is a "threshold inquiry," the federal court "may find that it can dispose of the application in a fair and prompt manner if it proceeds first to resolve the issue whose answer is more apparent from the record and arguments."  *Id.* at 485.  Supreme Court jurisprudence "allows and encourages" federal courts to first resolve the procedural issue, as was done here.  *See id.*

Here, the court concludes that reasonable jurists could find debatable the court's ruling denying equitable tolling of the statute of limitations.  The court therefore GRANTS a COA on the issue of whether Daly's petition was untimely.

\\

\\

\\

United States District Court
For the Northern District of California

Accordingly, the clerk shall forward the file, including a copy of this order, to the Court of Appeals. *See* Fed. R. App. P. 22(b); *United States v. Asrar*, 116 F.3d 1268, 1270 (9th Cir. 1997).

**IT IS SO ORDERED.**

Dated: June 6, 2013

PHYLLIS J. HAMILTON
United States District Judge

United States District Court
For the Northern District of California

14